**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-03154-CMA-KMT

CRAZY WILLY'S INC.,

    Plaintiff,

v.

VALLEY FORGE INSURANCE COMPANY, and
CONTINENTAL CASUALTY COMPANY,

    Defendants.

---

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

---

This matter is before the Court on Plaintiff Crazy Willy's Inc.'s (Crazy Willy's) Motion for Reconsideration. (Doc. # 46.)

This case arises out of a dispute concerning insurance coverage, in which Plaintiff alleged that Defendants, in refusing to pay Plaintiff's claim for a loss of property under a business insurance policy, breached their insurance contract and unreasonably denied the payment of their claim. On October 31, 2014, Defendants moved for summary judgment. (Doc. # 28.) On March 2, 2015, this Court issued an order granting Defendants' Motion for Summary Judgment (Summary Judgment Order), concluding that Plaintiff's claims failed as a matter of law because the property at issue was not "covered property" under the insurance policy. (Doc. # 42.) Plaintiff moved for reconsideration of this decision, pursuant to Federal Rule of Civil Procedure 59(e). (Doc. # 46.)

The Federal Rules of Civil Procedure do not explicitly authorize a motion for reconsideration.  Accordingly, where, as here, a party's motion seeks reconsideration of a non-final order, such relief falls within the Court's discretionary power to revisit and amend its interlocutory orders as justice requires.  *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 n. 2 (10th Cir. 2008) ("The District Court's partial summary judgment ruling was not a final judgment. Thus, [plaintiff's] motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."); s*ee also* Fed. R. Civ. P. 54(b).

There are three major grounds justifying reconsideration of an interlocutory order: "(1) an intervening change in the controlling law, (2) new evidence [that was] previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Concomitantly, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law, but such motions are "inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).  To that end, "[a]bsent extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed." *Id.*; *see also Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F.

Supp. 2d 1250, 1256 (D. Colo. 2000) ("Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider is not at the disposal of parties who want to rehash old arguments. . . . [a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence.") (internal quotation marks and citation omitted).

In the instant case, Plaintiff advances three primary (and related) arguments in its Motion for Reconsideration, asserting that this Court failed to: (1) consider Colo. Rev. Stat. § 4-9-620 (Section 4-9-620), (2) establish that re-conveyance of the property at issue occurred under Section 4-9-620(c)(2)(C), and (3) acknowledge that this re-conveyance enabled Plaintiff to recover under the terms of the insurance policy. (Doc. # 46.)

As a preliminary matter, the Court notes that it already addressed the issue of Plaintiff's ownership and possession of the subject property in its earlier Summary Judgment Order. (Doc. # 42 at 12-13.) Regardless, Plaintiff's arguments advance a theory of re-conveyance under Section 4-9-620 (Doc. # 46 at 2-7), but fail to show that this statutory provision applies to its claims. Under this provision, Plaintiff asserts that it effectively retook possession of the property at issue through an agreement with Jack's Halloween, which would settle Jack's Halloween's debt with Plaintiff. (Doc. # 46 at 6.) Thus, Plaintiff asserts that its losses should have been covered under its insurance policy with Defendants. In order to assess Plaintiff's claim under Section 4-9-620, a short discussion of the pertinent facts is necessary.

## I. BACKGROUND

On June 16, 2011, Plaintiff Crazy Willy's and its sole shareholder, Jeremy Haster, both franchisees of Halloween Express, L.L.C., entered into an Asset Purchase Agreement with Jack's Halloween, L.L.C., another franchisee of Halloween Express, L.L.C., and its owner, Brian Veatch. (Doc. # 28-3.) That Agreement provided that Crazy Willy's would sell particular merchandise to Jack's Halloween in exchange for periodic payments. (*Id.* at 2-3.) In order to sell merchandise to its customers, Jack's Halloween co-mingled the property it bought from Crazy Willy's with property from other vendors, including Morris Costumes. (*Id.* at 4.) Following a disappointing period of sales, Jack's Halloween was not able to make its final payment of $200,000 to Crazy Willy's or a $205,000 payment to Morris Costumes. (*Id.*) Shortly thereafter, the merchandise from each of Jack's Halloween's three stores, which included both the merchandise purchased from Crazy Willy's and the merchandise from Morris Costumes, was placed into three separate trailers, leased to Jack's Halloween, for storage. (*Id.*) Each trailer was secured by a padlock and Mr. Veatch had access to the keys. (Doc. # 28-4 at 83:10-18.)

This stored inventory was worth approximately 400,000. (Doc. # 28-5 at 3.) In an effort to discharge its debt to Morris Costumes, Jack's Halloween agreed to allow Morris Costumes access to the three trailers. (Doc. # 28-5 at 3.) Scott Morris, of Morris Costumes, represented that he would pay to ship, store, and separate the property it

had sold to Jack's Halloween, and then ship Crazy Willy's property back to it. (*Id.*; *see also* Doc. # 28-4 at 91:14-93:9.) Morris Costumes received the property at its North Carolina warehouse and separated the merchandise that it had sold to Jack's Halloween from that merchandise purchased from the other vendors. (Doc. # 42 at 5.) However, Morris Costumes did not return the property to Crazy Willy's or to Jack's Halloween. Instead, Mr. Morris informed both Jack's Halloween and Crazy Willy's that the separated property could be picked up from Morris Costumes' North Carolina Warehouse. (Doc. # 28-4 at 113:21-114:15.) Rather than picking up the property, Crazy Willy's submitted an insurance claim to Defendants asserting that the property had been "stolen." Defendants subsequently denied coverage. After Crazy Willy's sued, alleging that this denial was in bad faith, this Court held that the subject property was not "covered property" under the insurance policy because Plaintiff did not own it at the time it made the claim. (Doc. # 42.)

### II.      ANALYSIS OF PLAINTIFF'S CLAIM UNDER COLO. REV. STAT. § 4-9-620

Section 4-9-620 allows for a secured party to accept collateral in full or partial satisfaction of an obligation. Crazy Willy's relies on Section 4-9-620(c) and argues that Jack's Halloween effectively consented to Crazy Willy's acceptance of the unsold inventory as a full satisfaction of Jack's Halloween's obligation, such that it again "owned" the property for purposes of the insurance policy. However, to satisfy the consent requirement of Section 4-9-620(c), the debtor must agree to the terms of the acceptance in a record authenticated after default. Colo. Rev. Stat. § 4-9-620(c)(2).

Alternatively, in the absence of an authenticated agreement, a secured party can still show consent if the secured party:

> (A) Sends to the debtor after default a proposal that is **unconditional** or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained; (B) In the proposal, **proposes to accept collateral in full satisfaction of the obligation it secures**; and (C) Does not receive a notification of objection authenticated by the debtor within twenty days after the proposal is sent.

Colo. Rev. Stat. § 4-9-620(c)(2)(A)-(C) (emphasis added).

To this end, there is no evidence that Jack's Halloween, the debtor in the instant case, consented to the acceptance of **collateral in a record authenticated after default** before the shipment of the property to North Carolina. Further, Plaintiff fails to establish that it satisfied the conditions of § 4-9-620(c)(2), under the facts on record, to substitute for the lack of the necessary acceptance. Specifically, there is no evidence that Crazy Willy's provided Jack's Halloween with an **unconditional** proposal, in which Plaintiff agreed to accept collateral in full satisfaction of Jack's Halloween's debt to Plaintiff. In its Motion for Reconsideration, Plaintiff asserts that such a proposal was in fact submitted to Jack's Halloween and that an agreement was reached on this proposal, citing an email that Plaintiff identifies as Exhibit 36 to an earlier "arbitration." (Doc. # 46 at 7.) However, this Court has searched the docket for evidence of this email or agreement to no avail, including reviewing all of the exhibits attached to Plaintiff's response to Defendants' motion for summary judgment. This Court can only conclude that Plaintiff's reference to the "arbitration" indicates that this email was never submitted to the Court in the summary judgment briefings. Moreover, even if Plaintiff

**had** provided such evidence in its present motion, it is improper to introduce such facts in a motion for reconsideration, as such evidence was not "previously unavailable." *Servants of Paraclete*, 204 F.3d at 1012.

Looking to what **is** available to the Court, the only piece of evidence even arguably establishing that there was an agreement for reconveyance was an email submitted in the exhibits attached to Defendant's Motion for Summary Judgment. (Doc. # 28-8.) In this email, sent from Jeremy Haster (of Crazy Willy's) to Brian Veatch (of Jack's Halloween), Plaintiff demands an immediate transfer of possession of the subject property from Jack's Halloween. (*Id.* at 2.) It references discussions between Plaintiff and Jack's Halloween, but fails to establish that Jack's Halloween consented to the acceptance of **collateral in a record authenticated after default**. (*Id.* at 1.) Moreover, this email does not establish the necessary criteria under Section 4-9-20 to substitute for consent. It does not express an **unconditional** proposal for an acceptance of collateral, but merely communicates Plaintiff's belief that Jack's Halloween had attempted to defraud Plaintiff by shipping the subject property to Morris Costumes. (*Id.*) Regardless, at the time of this email, the subject property could not be considered "stolen" and was not "covered property" under the insurance policy, because at no time was it in the possession of Plaintiff before it left Colorado.

Thus, Plaintiff has failed to provide any grounds warranting reconsideration. Plaintiff does not provide any indication that Section 4-9-620 has marked a change in controlling law. Moreover, Plaintiff failed to provide any new, previously unavailable

evidence for this Court to consider that would substantiate the assertion that in fact this Court ruled in error, as a result of failing to find that a re-conveyance occurred. As such, Plaintiff did not identify any clear legal error or manifest injustice in this Court's Order (Doc. # 42) granting summary judgment in Defendant's favor.

### III.   CONCLUSION

The arguments advanced by Plaintiff in its Motion for Reconsideration (Doc. # 46) are almost identical to the arguments this Court considered in granting Defendants' motion for summary judgment. (Doc. # 42 at 12-13.) Further, Plaintiff's Motion would require a reassessment of this Court's earlier determination of possession, but Plaintiff simply provides arguments under Section 4-9-620 that it could have raised earlier. In any case, as described above, Plaintiff has not shown that there is a disputed issue of material fact with regard to the ownership of the subject property, even under Section 4-9-620.

Accordingly, it is ORDERED that the Plaintiff's Motion for Reconsideration (Doc. # 46) is DENIED.

DATED: March 31, 2016

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge